Scott Sternberg, Advocate, Capital City Press, LLC, and KTC Communications The case before your honors presents a central question of whether a federal judge's order sealing a transcript and subsequently a settlement agreement can be valid without consideration of Louisiana's public records law and whether the court below properly ruled as to the First Amendment and the common law rights of access. I want to begin with what I consider to be a remarkably considerate filing by my opponent in this case. The sheriff sent the court a letter that said, quote, generally speaking, amounts of settlements and civil claims involving public agencies are matters of public record. I'm sure your honors have looked at that letter. Mr. Frost sent that letter because universally everyone agrees that under Louisiana law, the terms of a settlement, particularly the amount paid, is a public record. Did you file a public records request? We did, your honors. That's when you got the redacted check. That's correct. June 15, 2018, we sent a public records request to the sheriff. The sheriff provided a redacted check and said, I'm sorry, I can't give you the amount because of the seal order that's at issue in this case. And that request was filed pursuant to Louisiana public records law. That's correct, your honor. And then when you got the redacted check, what was your next move? Well, our next move was to research the issue, and what we found was that if we had filed a public records lawsuit under 44-1 et sec in Louisiana law, that that matter would have been stayed because it's a full faith and credit issue. Because the western district had issued a seal order, we found some cases in Pennsylvania, New Mexico, that said that the state court could not proceed on a public records lawsuit. You anticipated my question. My question is, you have a state law question, Louisiana statute, which provides that you can ask for the record. Yes. You ask for it, you get a redacted check. That's right. So I'm wondering why we aren't in state court. And so you're telling me that you made a determination that it would have been futile. That's correct, your honor. So then you filed a federal lawsuit. Your honor, representing newspapers, every dollar matters, as I'm sure every client, every dollar matters. We didn't want to go down the state court route knowing that we would wind right back in federal court. So we went and intervened at the federal court level. Judge Hanna granted our intervention under FRCP 24 as a matter of right because this court has held several times that the media has a right and interest in intervening in confidentiality orders. We had a hearing. At the hearing, the court acknowledged that there was a great public interest in the amount of this settlement because of the facts underlying this matter, your honor, where a gentleman was under the custody and control of the Iberia period sheriff and allegedly committed suicide. The plaintiff in this case has alleged that he was actually killed by the sheriff in some sort of negligence or intentional act. And the public never got to find out the answer to those allegations because the matter was settled at a settlement conference before Judge Carol Whitehurst. Here's my other problem. So you're asking us, and correct me if I'm wrong, you're asking us to vacate the order of the district judge, the order sealing the record. Is that the relief you're seeking? Your honor, I'm not seeking for you all to give me the settlement agreement. The sheriff is going to do that when you vacate the order that that judge has. My question is, yes. Yes, that's correct. You're asking us to vacate the order sealing the record. It's exactly what this court did. But what you what you really want is the record, which is a record that would have been or should have been or maybe is a record created by the parish. The parish has it. Well, the sheriff. Does the sheriff have the authority to pay a settlement without the parish approving that? Yes, your honor. The sheriff's created by the Constitution. It's a constitutional office as opposed to a parish. So he has a budget which has nothing to do with the parish. That's correct, your honor. Well, actually, it's set by taxes collected in the parish, your honor, but it's separate from parish government. But the sheriff needs no approval or appropriation or anything from the parish to settle the case. Does the sheriff have to make a record of actions like that? Does he have a record of it? Yes, your honor. Under the Louisiana on the Louisiana law. Forty four one a one. The parish has to keep for three years a record of every expenditure made under the Constitution and laws of the state of Louisiana for three years. He has to keep it. We know he has it. He's told us he has it. He said, I can't give it to you. So what did we do? We went to the federal court that had issued the seal order after researching it. Quite frankly, we went to the federal court and asked the court to vacate the order solely as it relates to the amount of the settlement, which we know is in the transcript from the settlement conference. How do you know that? Because the judge told us, your honor, it's in the record at 1332. March 15. The original magistrate has a hearing that you want access to. By the time you I don't know at what point you found out about that you're watching the civil rights trial that you think is going to happen. By the time you move to vacate that March 15th. Sealing order. It's before a different magistrate judge. Well, your honor, if if you recall the. Yeah, no, you're right. There were no district judge. Yeah, that's OK. Here's my question. Maybe a variation on what Judge Grace was asking. What are you asking for? You are not asking for access to the settlement agreement. No, your honor. You are not asking. You are not suggesting the First Amendment gives you access to settlement conferences. No, your honor. And yet this minute entry that you document 142 says what we've got here is the end of a settlement conference. But not the settlement conference, your honor. Your honor himself has done numerous settlement conference in front of the magistrate. You go. You settle the case. And then after the settlement conference is concluded in order to affect the settlement under Louisiana law, you go into open court. That's in state court. But here the parties say, you know, we've got we've got a result. We'd rather we'd like to read something on the record. Your honor, the record is what matters. Are you asking for the record? Not not the document, not the hearings. You're saying what? That under common law, you started to answer this legally. Ford and Van. How do you pronounce it? Van Vandenberg. Van Vandenberg. Van Weyenberg. Weyenberg. I did phonetically put it on my note. Ford and Weyenberg are your authority. This is not a First Amendment case. You're asking for common law. You're sit. Tell me if I'm wrong. Judge, is it pronounced Hannah? Judge Hannah. Hannah. Abused at discretion. He knew what the law was. He cites Van Weyenberg and Ford, maybe not Ford. But he just got the he got the balancing role. Is that your position? Respectfully, Judge, you're wrong. OK, the we want this vacated for three reasons. The first reason is that Judge Hannah and the most important reason, which should be reviewed de novo, is that he did not consider the effect of his order on the Louisiana public records law when he issued the order. And he sort of did. I mean, your honor, his his reasons. He's there. There are two orders floating around here, the confidentiality order and the sealing order. That's right. So he gets a little confused. Yes. OK, but but still, the end result is he describes the Louisiana public records and he says, you know, go get that in state court. But your honor, he talks about the Louisiana public records law in the context of whether this document in federal court is a public record. So all you want, all you want is the transcript of whatever happened in federal court. And you're entitled to that under the line of authority you're pointing to. We do not even need the transcript. We need the court to order that the amount of the settlement cannot be sealed in the transcript so that the sheriff will give us the check. Which which is, in effect, an order. You need us to vacate the order sealing. That's what we moved for, Judge. And we know that's that's the reason that the sheriff gave for not giving you the record. And in his order and reasons, Judge Hannah does not discuss in any way how there is absolutely no exemption under Louisiana law for the expenditure of public funds. There is no case that says that's reversible error under Davis and Ford. De novo. It goes right back to him to assess it under that theory. You're OK with that. Your honors, you can you can render it right now. There are no cases. I have provided you with numerous cases that say that the expenditure of public funds is a is a public record. That's the bright line rule. If it's two private parties that have a suit, especially if it involves a minor who's going to get money, that therefore there could be compelling reasons that that amount gets kept private. The bright line rule is no. When it's official misconduct, death in police custody and taxpayer money, then always. Yes, under the precedent of this of this circuit and other circuits of this country. Yes, your honor. Because the as this court has said, citing Third Circuit precedent, the expenditure of public funds is what attaches. And there is a presumption decision, right? Fancy. That's correct. You're on one end, I think, of the spectrum. That's right. It's physically on file. Right. You get it. I don't think our court seeing that because our court says filed and what approved. Well, our court has added a seemingly added a second element that the the federal courts got to take action on the your honor. And the federal court did because the federal court put the settlement on the record in order to effectuate the settlement under Louisiana law. In four in Ford versus city of Huntsville. This court expressly said at two forty one. We are not asked to grant appellant access to the settlement agreement. Rather, we are asked to determine the validity of the confidentiality order. The validity of the order will determine whether the appellant is successful in obtaining the document. That's that's our case right there. Well, is it? Why do we even care about the confidentiality order? What we have is a ceiling order. If we make it the ceiling order, you may get everything you need. That's right. It's an it's an applicable case. It's right on point. It's the exact same facts. You got the Texas statute in central Louisiana statute, both of which say that we get the records of expenditures. But your honor, I want to go back to your question because I would argue that the First Amendment right of access does apply here because this is a judicial document. It is a transcript of an official proceeding. But but we don't have to get there. You don't have to. That's right. Your honor. In fact, the Supreme Court case law counsels against reaching a constitutional issue. If a matter can be resolved on something less than reaching the constitutional issue. But I don't even I mean, I am curious about that. How could we have two different standards for the same access point? One is less than the other. Isn't it crazy? The First Amendment access only applies to certain documents in in certain circuits. And and in this in this circuit, there is no precedent that says that the First Amendment right of access applies to documents itself. There are there are cases including this gets close. Davis gets really close, but it doesn't expressly hold it. And in Doe versus Stiegel in 1981, the Fifth Circuit said that the civil that that the First Amendment applies to the access to civil trials, including the courtroom itself. But the common law right, which is kind of a pseudo right within the First Amendment. Let's assume they hadn't decided to read out loud much of anything in that hearing. They had just settled privately. This wouldn't be a federal court dispute then. Right. You'd be going into state court and saying we get access to that check under the public records. Under your honor's hypothetical, is there a confidentiality order? Well, I don't I think you're right. My reading of the law is they the sheriff can't agree to that. Instead, what he did here was he goes in there and says we'd like a federal court order saying we can't. And then that trumps Louisiana law. That seems to be inadvertently maybe or whatever. The letter sort of pulls back from that, but not to defend the sheriff. But I don't I don't know if the sheriff asked for the confidentiality order. They did. And he probably knows that that's not right. So I know that his lawyer is here and I would doubt very seriously that his lawyer who agrees with me on whether or not this is a public record. What happens if the parties in that hearing said we both ask you we've agreed to a confidentiality order? You say that's inconsistent with Louisiana law. Great question. That actually happened in SEC versus Van Weyemberg. Of course, that's not a Louisiana law case. But the fact that the two parties stipulate to it doesn't matter in Dutton v. Gust and in Times-Picayune publishing under Louisiana Supreme Court jurisprudence, the parties cannot contract or order their way around their obligations under the transparency statutes in Louisiana. Can't agree to make a public record private. Absolutely, Judge. Well, you know, this law and maybe you even cited you read that Arthur Miller article in the Harvard Law Review about this area a little bit. It's interesting. He cited a judge. You cited. Well, you remember in it. He really emphatically says settlement amounts should stay private, especially when it involves children who will get a big amount of money and who will get a harassed for the money. And in a sort of distilled sense, it's possible opposing counsel and the sheriff are just thinking, let's protect this kid. We like the media, but but that amount is going to put that child in a tough spot. What do you have a limiting principle that protects that? Or you say no. Judge, I would look at Johnson versus Parchment School District, which I cited for your honors. And when when in that case, the exact same argument was made and they appointed a guardian ad litem. We don't even need to do that because under Louisiana law, the child can't alienate the property that she can't. Her mother is in charge of her property. And if her mother improperly deals with the property or gives it away to a snake oil salesman, as the plaintiff has. I have to answer to the court that set up a trust or guardianship or whatever the courts. And the law requires your honors. It doesn't matter which way you go. First Amendment common law. It must be the most narrowly tailored infringement upon the right of access of the public. And a wholesale closure of the amount is not that a less of more narrowly tailored reaction would be to set up a trust, appoint a guardian. You know, it instructs the natural tutor, her mother, as to what can be done with the money. There are lots of other things that the court could have done, but it didn't even consider that. Instead, it weighed the right of the child to not be harassed by snake oil salesman against the media's right to write a sensational story about the amount. It's impossible to overcome such a balancing test, your honors. And I see my my time is expiring, so I'll save for rebuttal. Thank you. Thank you, counsel. Good morning, your honor. My name is Carol Powell Lexing. I'm here on behalf of Shandell Bradley. And we respectfully submit that the appellant's appeal should be dismissed for lack of subject matters jurisdiction. In this particular case, the appellants have filed their appeal under the collateral order doctrine. But as we know, in the Coing v. Beneficial Industrial Loans case, they laid out three factors that must be satisfied before the collateral order doctrine is used. And the one particular factor that conclusively determined the disputed question is one hurdle that the appellants cannot get over. And they can't get over that particular factor because Judge Hanna did not, he did not have anything to do, basically, with the settlement conference and the sealing of the documents. It was done by another judge, Judge Whitehurst. And what the appellants are simply asking is for one judge to overturn or vacate the order of another judge, which this particular judge lacks subject matters jurisdiction for doing it. He cannot conclusively determine the disputed question of nondisclosure because he wasn't privy to any of the details or information as it relates to the settlement conference. Judge Whitehurst, all she did was, in the settlement conference, because I was there, she just memorialized what the parties agreed to. Well, counsel, that's not my recollection. There was witness testimony taken at this, correct? No, Your Honor. There was no proceedings. Absolutely no proceedings. I thought— All we did was we went into court, and she basically reiterated the terms of the agreement. I thought Ms. Bradley was put on the stand and confirmed that she was cogent and understanding. She was put on the—well, she was asked those things. That's witness testimony. Yes, Your Honor. But— No, that's really an important point. At this point, we've gone beyond a document. We've created a federal court hearing, witness testimony under oath, and then am I correct that the magistrate then, sua sponte, informed third parties, you can't speak about this? She informed— That's a prior restraint. That's a very substantial First Amendment situation. You agree? That's a federal court order on third parties. You can't speak about what you've heard. That's a— Your Honor, I don't recall—to be honest, I don't recall her instructing third parties that you can't speak about what you heard. Or is the court saying that when she instructed Ms. Bradley— Everyone in the courtroom. In the courtroom? That's my recollection from the audio recording. From the audio tape. It's been a minute. It's been a minute. So if there's witness testimony under oath, therefore possible perjury, plus you have court orders clearly on the record retaining jurisdiction of the case, and arguably, depending on people's memory, even informing third parties you can't speak, that's an extraordinary amount of federal court action and involvement, which is why in my mind I was thinking this isn't really a document issue. This is access to court, full transcript, audio transcript of a hearing. There was audio taping of the proceedings. You don't disagree that's essentially a transcript of a hearing? The audio taping of the proceedings. That's a transcript of a hearing, yes or no? Don't agree if you don't agree, but it would seem to me it is. I'm trying to get my recollection back. It's been a minute as it relates to that. This is part of the difficulty of when courtrooms are closed and there are no stenographers. It is certainly hardest for the media that has every right to intervene and try to get access to something getting attention, to even know what they're litigating against. But our position is in this particular case that the media lacks subject matter jurisdiction because they can't meet the first pronged test of the co-ing test where the court could- There is a final order. Let me see if we can get some agreement. Do you agree that a settlement between a sheriff and a litigant is generally a matter of public record? In other words, but for this order sealing all of these proceedings, we are talking about a public record. You agree with that? Generally, but in this particular case, the judge who did not seal the record, the appellants are asking him to unseal the record of another judge's order. You're saying that judge lacks subject matter jurisdiction? Right. What is their remedy where a public record is denied? What should they do? You're saying that judge lacks subject matter jurisdiction, so where do they go? That judge lacks subject matter jurisdiction from vacating the order of another judge. The appellants could have basically asked or objected or intervened and asked the district court to pretty much get involved because you got two judges sitting in the same court. One magistrate judge cannot overturn the order or ruling or vacate the order of another judge. Specifically, they should have done what? They should have asked the district court to get involved and appealed it to the district court. That's our position, that they should have appealed it to the district court. They should have asked the district court to step in and not Judge Hanna because Judge Hanna wasn't privy to what took place in the settlement conference. Your case is much harder if you're defending Judge Whitehurst's ruling because she gave no reasons at all. It was a sua sponte ceiling. I'm defending Judge Hanna's ruling because he had no facts to make a determination whether or not non-disclosure. He does the balancing test. I can't pronounce it. The Van Wigen case, Ford, Davis, you accept that as the appropriate Fifth Circuit law to be assessing whether there was an abuse of discretion? Do you agree that's the law we'd be looking at? I agree that that's the law. He did not abuse his discretion in actually balancing out the public's right of access. Let's assume we decide there is jurisdiction. We are reviewing the right order. You're defending his balancing. You're saying it's not an abuse. My question to you is do you have any case where the case is resolving official misconduct, a person shot while in custody, with money from the taxpayer, and those interests don't outweigh what I'll call a harassment concern? In our particular case, we have a minor involved where the minor interest outweighs the public access. Okay. What's your best authority where it involves official misconduct being settled secretly, privately, with taxpayer money, that those interests don't outweigh the concern about a minor being harassed? What's the case that tells us under this balancing approach for federal common law access that would not have been an abuse? I don't have a case for that, Your Honor. I didn't see the district court cite. I mean, the magistrate didn't cite one either. That's generally a red flag. I'm sorry, Your Honor. It's a red flag when, as to an abuse, if a magistrate can't cite authority to explain how he's balancing. My read of the record is he said, oh, the media is into sensationalism. He didn't acknowledge at all the official misconduct concerns of the public, the taxpayer money. He just sort of denigrated the media, and then he did understandably say I'm concerned about the child. But I don't see any case that in any circuit when it's applying the common law right of access that says that concern of harassment can outweigh. That's what I'm looking for, and I don't hear you telling me one. There was a case called Bellow Broadcasting case versus Clark, and in that particular case, the broadcasters filed a request to copy a public broadcast audio tape for discussion. The court held in that particular case that there was no First Amendment right to access these audio tapes because of the fact that the, and the court didn't abuse his discretion because the court had to look at whether or not the right of a trial, of a defendant that was about to have a trial, the court had to look at that and determine how that was going to affect that trial. That's a tough balancing when a criminal defendant's rights at this future trial could be implicated. But I, again, I'm going to zero in on what we've got as interests here. But in this particular case, the case also balanced that, the chilling effect that the disclosure of the amount of the money is going to have on the public and other cases that are going to follow that case because the sheriff and, the sheriff got indicted. About 11 of his deputies were convicted for excessive force, so the court looked at the chilling effect that it was going to have when he was balancing out public access versus nondisclosure. He looked at the chilling effect that it was going to have on these other cases and the jury deliberations and the other settlements that were going to follow. And he also looked at the right of privacy as it relates to the minor interest, preventing the minor from being harassed from people when they found out how much money the minor received. He balanced that interest against the public right of access. And the, in balancing that, he took into consideration, okay, he balanced the nondisclosure against those particular interests. Complicating that argument, though, is the sheriff himself has come in with the letter that opposing counsel began with, saying we'd normally have to say how much taxpayer money we spent to resolve this. But I can't because there's a federal court order. And yet, the sheriff was in the conference saying we need that federal court order. That seems extraordinarily concerning and that's precisely what our case law has said. Courts have got to look at the impact on state public disclosure laws. In other words, the sheriff can't say in one breath, I can't disclose what I have to disclose because I was in that court requesting a confidentiality order. That's a really problematic situation for Louisiana law, right? Right. And the court actually balanced that out. The court basically took into consideration the presumption in favor of disclosure. In the sense that when the court balanced out the interest of the minor child versus the right of access, regardless of what the sheriff said or not said, the court took that into consideration in determining that nondisclosure was in the best interest for the right of privacy of the minor child, to prevent that child from being harassed and being thrown into a spotlight that she's never been in and a known notoriety that she's never been in. So you disagree with his proposition that were you in state court as to the public records document, it would not be automatic this check would get disclosed? There's an exception when minors are the ones who receive the check? Yes, Your Honor. There are exceptions to every rule, and this is the exception. There are two distinct instances in this particular case as it relates to, distinguishable from the cases that the appellant cite. One is we're dealing with two judges in the same court. I mean, I'd be able to find Louisiana state law cases where public disclosure was denied based on a concern about the minor's privacy interest. There are Louisiana state law cases where that's occurred. I look for those cases, Your Honor. I look high and low in federal and state court for those particular cases, but there are absolutely no cases specifically on that particular issue. There aren't any? No, sir, there aren't any. We search high and low, but when you have an interest of a child, you have to weigh the public access, how the public access of knowing the amount of the money is going to affect the right privacy of that particular minor child. Now, in this case, like I said, the appellant's cases that they cite are very distinguishable because in this particular case, Judge Whitehurst, she memorialized basically what the parties agreed to. She did not approve. She did not basically instruct the settlement conference. All she did was basically memorialize what we said, and because of that, the appellants lacked subject matter jurisdiction based upon the collateral order doctrine to even be here to get to those other issues because they cannot satisfy the issue of whether or not the court could conclusively determine the outcome of the dispute, and the outcome of the dispute is nondisclosure. Judge Hanna could not determine that because he was not at the settlement conference, and that's one hurdle that the appellants— Refreshing your memory, if Ms. Bradley did take the stand under oath and give testimony, would you agree that the media would unequivocally get access to that testimony? You know, I'm not for sure that she took—that she gave any testimony under oath. I'm just not really clear. If she did. If she did. They'd get access to that. No, because you still have a minor involved. They would not be entitled—that doesn't change anything. It doesn't change anything because you still have to balance the privacy rights of the minor against the public access, and it's our position— Protective order? Was that courtroom even closed? There were other people there. Your Honor, that courtroom, there was no secret proceedings. The courtroom wasn't closed. Nothing was—there was an audio recording of what took place. And there was no request for— And it lasted about five—most five minutes. There was no request for a protective order either, a good cause showing. No request— It's an open courtroom. There are people sitting there, and there's no protective order, but at the very end of it, sua sponte, a federal judge says, I know I've heard witness testimony, but guess what? No one's ever going to get access to this. Your Honor, from my understanding, Judge Whitehurst did not instruct third parties to not reveal what was in there. She may have instructed the parties, but she did not instruct non-parties to not say anything about the proceedings. It was an open proceedings. It only lasted a few minutes, if I can recall. It's been a minute. And all she did was basically memorialize what the parties agreed to as it relates to terms of the settlement. There was no documents, no settlement agreement filed, nothing other than Judge Whitehurst memorializing that settlement conference. But the appellants have asked Judge Hannah to go in and vacate the order of Judge Whitehurst. And it's our position that they do not lack subject matters jurisdiction. They had an opportunity to brief those issues twice, but they did not. They have taken a deaf ear to subject matters jurisdiction. They also have taken a deaf ear to the right of privacy as it relates to the child. On page 7— Who were Mr. and Mrs. Walters? Those were the parents of Ms. Bradley. They would be third parties. They're not parties to it. So if they were in that courtroom, are they at liberty to speak about what was said? They didn't speak, Your Honor. Would they be at liberty to? If the court required them to. No, not if the court required them. If they just wanted to talk to the media. Or if they wanted to just talk to the media. Or was everyone in the courtroom instructed this is secret? No. She never instructed that anything was secret. That's not true. I do remember that. Counsel, I just want you to understand. I have a real problem comprehending how a matter is one where everybody was so concerned about it being secret. And now you're telling me it was convened in open court in front of whoever chose to be in the courtroom that day. There was no secrecy, Your Honor. I don't know where the word secrecy comes from. But you're defending a sealing order. That makes something secret. I'm defending a sealing as it relates to protecting the right and privacy of a minor child from being harassed. But, people, that concern wasn't just raised in the moment. That concern was raised before you arrived at the courthouse to memorialize this agreement that was concerned about the privacy. But you're telling me all that occurred in an open courtroom in front of whoever happened to be in that day. And are you further saying that the judge didn't order that everyone who was in the courtroom not talk about it? It's my understanding, my recollection, that she did not impose an order on everybody in the courtroom. That's my understanding right now.  But before we can even get to that, Your Honor, the appellants still have not been able to satisfy the factor that they got, they asked this court to hear the appeal on. That is the collateral order doctrine. They cannot get past that first factor where Judge Hanna could conclusively determine the outcome of the question. And that is a very important issue before we can get to the other issues. With a captioned case saying we want access to document 153 or 152. And Judge Hanna's the judge presiding, and he says no. And he gives his reasons. That seems like a final order. There's no other way they can get access to a federal hearing. Judge Hanna did not preside over the settlement. I know that.  He has the captioned case. They want access to a document that happens to be an audio tape transcript of a hearing. But there's a general rule that one judge sitting in the same court cannot intervene or interfere or vacate another judge's order, interfere with the proceedings of another court. When you say general rule, I'm confused by that entire argument. What's the best case for that, and did you object yourself or cross appeal saying he had no jurisdiction himself? Do you have a case that he lacked jurisdiction, number one, and are you cross appealing saying that he usurped his authority? It was ultra-virus for him to provide. No, I'm not saying he usurped his authority because basically he couldn't have usurped his authority because the appellants appealed to him instead of appealing to the district court. Had they made their appeal to the district court to reconsider what Judge Whitehurst had done, then it is our position at that particular point, then they would have satisfied the collateral order doctrine. But they did not. They went to Judge Hanna. Judge Hanna cannot, was not privy to any details. Had that procedure happened, what differently would a district court, could a district court have ruled than what Judge Hanna had? How would ruling in any structure you might want be improved? If the appellants had gone to the district court. Let's imagine it's in front of the district court. The district court rules. What extra law would support sealing this hearing? What extra law would support sealing? Besides the law that Judge Hanna articulates. What extra law? What argument did Judge Hanna miss? Judge Hanna did not miss an argument. Okay, that's fine. That's our position. Thank you, counsel. Thank you, counsel. Rebuttal. Judge Higginson, I think you hit the nail on the head. Of course this conclusively determines the question under the collateral order doctrine. Your Honor, the plaintiff and defendant consented to trial by magistrate judge under 28 U.S.C. 636. And under 636.3, we can appeal a final order of that judge presiding as trial judge to your honors. And that's how we're here. Your honors certainly can determine jurisdiction on the briefing. I disagree with opposing counsel. We brief jurisdiction extensively. And if your honor would like further briefing on that, I'm happy to provide it. Here's my little twist on it, though. And I agree we have jurisdiction. Can an order excluding the media be issued nunc pro tunc? In other words, I guess I'm wondering in the abstract, why are we considering any of the reasoning that Judge Hanna later constructs? Wouldn't we be restricted to whatever the judge at the time of the closing? Or have you thought that out? I have, your honor, because I considered when we appealed, when we filed our intervention in front of Judge Hanna, Judge Hanna serving as the trial judge had referred it to Judge Whitehurst as a magistrate, whether or not he would be interested in taking testimony about our interests. The media's interest is the same as the public's interest. The Supreme Court has held that many times. I believe that Judge Hanna, his reasoning was effectively that he didn't see any reason for us to see the amount of the settlement. And I think that perhaps the briefing at the lower court was not as refined as it is in front of your honors because he clearly confused the common law and First Amendment rights of access in the ruling, and then he didn't apply the right test to the common law right of access, and then furthermore didn't even acknowledge that this was a public record under numerous Louisiana cases. And so I think perhaps that the briefing was not adequate at the lower court level and that Judge Hanna didn't have all the law briefed for him. If you agree the media has no superior right to the public, it's an important principle for us to vindicate that neither the media nor the public gets access to transcripts of settlement conferences. Correct or not? I don't know if under experience and logic tests from the U.S. Supreme Court. I'm not sure that a settlement conference would be something that under experience and logic is open to the public, but I haven't thought that through, Judge. I will say that when you emerge from a settlement conference and take testimony in open court, that that is generally something that is an open proceeding. If you take testimony, you don't have access to it. That happens to have occurred. It may improve your situation. I'm worried about a limiting principle. If you win and we write an opinion that says that, how do we nonetheless reassure litigants that their settlement conference discussions that may be memorialized wouldn't be always accessible by the public? Well, Judge, I think the Fifth Circuit has said that if you put something on a judicial transcript of a judicial proceeding, that it is accessible by the public and that it's presumed to be accessible by the public under the common law, under the First Amendment. Again, are you saying you want us to wholeheartedly embrace pansy if there is, quote, physically on file a document, then that triggers access? Or are there some circuits that are saying only if acted upon? Correct. The Second Circuit had an interesting case on this that I believe I cited for Your Honor that deals with whether or not something is a judicial document, and it deals with, I think I have a quote here, the performance of the judicial function, right? And if you are putting a settlement on the record, memorializing the terms in order to bind the parties, then you are performing the judicial function. Now, in a settlement conference, which Your Honor and I have both done plenty of times in front of magistrates. I've never done one. Well, Your Honor, excuse me. I have. Your Honor has done many times. A lot of times. And that's private. Yes, Your Honor. A settlement conference is private. And I am not saying that we should have transcripts of those because, quite frankly, to have a transcript would reveal the settlement position of each party in an unsuccessful mediation. So what if they just say at the end, we're finishing our conference, Your Honor. We'd just like to tell you what happened. Well, then they wouldn't be bound. Pardon me? Then they wouldn't be bound. The whole purpose of putting it on the record is that the plaintiff and the defendant are bound to the terms. And Louisiana law requires that. Louisiana law requires that. Louisiana law allows for it. It doesn't require it. All right. It allows for a normal settlement. And, Your Honor, I just want to briefly talk about the compelling interest here. Privacy interests require both that the person have a subjective interest and that the public be willing to acknowledge that interest as reasonable. And in this case, we're not asking for the minor child's name. We're asking for the amount of the settlement. And I know that my opposing counsel just said that there are cases. There are no cases that say that we can't get the amount of a settlement. This is the only case that I could find in my extensive review, and Amici could find, the 42 Amici who filed, where we can't get the amount of a settlement made in a public body. Both of you have argued it, in my opinion, excellently. But precisely because you were so good, every single case that parties put in table of authorities, I try to read. Ford v. Huntsville is an important case. The volume in F-3rd is wrong in your brief. You may not have noticed it, but that's why the exactitude is really important. So then I went to her brief, and the table of authorities says you'll find Ford v. Huntsville at various pages, but the pagination is off. These are small little points, but they make a difference for judges trying to read the cases. So it's a tiny point. I only bring it up because you both did so well. But I think when you look at the record, the volume in F-3rd is wrong. And so it just makes it—anything that makes it harder for us to read the cases cited is a challenge. And I think you're both right, and the publishers are wrong. They just messed up the pagination. Ah, probably Westlaw. I'm only kidding. Would you like for me to briefly conclude? No. No. We got it. No, no, don't apologize. It's just the benefit of the audience. Thank you, judges, for a lively discussion. All right. I'm good.